# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SVETLANA LERNER, *on behalf of herself and those similarly situated*,

**Plaintiff,**

v.

MIDLAND FUNDING, LLC, and
MIDLAND CREDIT MANAGEMENT,
INC.,

**Defendants.**

Civil Action No. 20-7838 (BRM)

**OPINION & ORDER**

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Defendants Midland Funding, LLC and Midland Credit Management, Inc. (collectively, "Defendants") seeking to compel all retainer agreements between Plaintiff Svetlana Lerner ("Plaintiff"), individually and on behalf of all others similarly situated, and Plaintiff's counsel, the Kim Law Firm, LLC (the "Kim Firm"). Dkt. No. 71. Plaintiff filed an Opposition to Midland's motion. Dkt. No. 74. Defendants replied. Dkt. No. 77. The Court has carefully considered the relevant submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion to compel [Dkt. No. 71] is **DENIED**.

## I.     BACKGROUND[1]

Plaintiff initiated this putative class action by filing a complaint in the Superior Court of New Jersey, Essex County, New Jersey on or about May 29, 2020. Dkt. No. 1-1 ("Compl."). Plaintiff's Complaint asserts that Defendants violated the Fair Debt Collection Practices Act

---

[1] Both the Court and the parties assume familiarity with the facts for purposes of the instant motion. The Court therefore provides only the relevant facts.

("FDCPA"), 15 U.S.C.A. § 1692 *et seq.*, by regularly collecting or attempting to collect on past-due debts to which they were not entitled. *See generally* Compl. Defendants removed Plaintiff's state court action to this Court on or about June 26, 2020, asserting federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441(b) and 1446. Dkt. No. 1 ("Not. of Removal") ¶¶ 1-2. On August 14, 2020, Defendants filed an Answer. Dkt. No. 8.

On December 14, 2020, the Court conducted an initial conference with the parties and entered a Pretrial Scheduling Order. Dkt. No. 12. In July of 2021, Defendants moved to consolidate certain related cases. Dkt. No. 25. Plaintiff formally opposed Defendants' consolidation motion on August 2, 2021. Dkt. No. 30. On January 4, 2022, the Court granted Defendants' motion to consolidate, joining Caroline C. Zamora ("Zamora") as a named plaintiff in the case. Dkt. No. 41. Following consolidation, the parties continued with the exchange of discovery. However, on April 27, 2022, Plaintiff filed a suggestion of bankruptcy upon the record as to Zamora. Dkt. No. 46. In light of Zamora's bankruptcy, the Court administratively terminated the case and all then-pending motions, stating that "[a]ny party may file a letter request to reopen these matters . . . at the appropriate juncture." Dkt. No. 57.

Nearly three years later, on March 20, 2025, Plaintiff filed a letter requesting to reopen this action. Dkt. No. 58. The case was reopened on the next day. Dkt. No. 60. On April 2, 2025, the Court conducted a telephone conference with the parties. During the conference, the parties raised certain issues concerning subject matter jurisdiction, resulting in the Court's issuance of an Order to Show Cause on the same day requiring further briefing on those issues. *See id.*; *see also* Dkt. Nos. 64-67 (parties' supplemental briefing). The resultant briefing included a formal request by Plaintiff to remand this action to the Superior Court of New Jersey. *See id.* On June 16, 2025, during a telephone status conference, the Court denied Plaintiff's request for remand also set a

2

deadline of September 16, 2025 for the completion of fact discovery. *See* Dkt. No. 70. In addition, the Court gave Defendants leave to file a formal motion to compel production of Plaintiff's fee agreements. Dkt. No. 70. Defendants filed the instant motion to compel on July 11, 2025. Dkt. No. 71. Plaintiff filed its formal Opposition on August 4, 2025. Dkt. No. 74. Defendants ultimately replied on August 25, 2025. Dkt. No. 77. The Court turns next to this motion.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation and provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele–Radio Sys. Ltd. v. De Forest Elecs., Inc.,* 92 F.R.D. 371, 375 (D.N.J. 1981). Relevant information need not be admissible at trial in order to grant disclosure. However, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). Upon a finding of good cause, a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action. Establishing "good cause" requires the movant to "specifically demonstrate [ ] that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice." *Glenmede*

*Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir. 1994)).

"Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999). Pursuant to Rule (26)(b)(2)(C), courts are required to limit discovery where:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

### III.    DISUSSION

In short, Defendants seek production of Plaintiffs' fee agreements with their attorneys. Defendants argue that the retainer agreements are relevant because they might reveal whether the named plaintiffs and the Kim Firm are adequate representatives for class certification purposes.[2] Defendants first submit that the fee agreements are plainly discoverable. *See* Moving Br. pp. 5-7 (collecting cases). Next, Defendants argue that the facts of this case "raise plain questions of adequacy" warranting production of plaintiff's fee agreements. *Id.* pp. 7-8. Defendants suggest that the Kim Law Firm is inadequate for two main reasons. First, their "lack of communication" with class representatives. On this point, Defendants cite to an FDCPA case, *Stromberg v. Midland Funding, LLC,* No. 16-9288 (D.N.J.), and suggest that the Kim Firm was proven inadequate there

---

[2] Dkt. No. 71-1 ("Moving Br.") at 5 (citing Fed. R. Civ. P. 23(a)(4) which requires the Court to perform, at the class certification stage, an analysis of the requirements of Fed. R. Civ. P. 23— including the prerequisite that plaintiffs "will fairly and adequately protect the interests of the class").

because the Kim Firm was apparently unaware that their client was deceased until nearly two years later when plaintiff was ordered to appear at an in-person mediation and could not do so. *Id.* Defendants also challenge the Kim Firm for their apparent delay in moving to reopen this litigation following resolution of named plaintiff Zamora's bankruptcy. *Id.* pp. 7-8.

In support of their position, Defendants principally cite to *Dixon v. Jefferson Cap. Sys., LLC* ("*Dixon*").[3] *Dixon* was an FDCPA case litigated in the District Court for the Southern District of Indiana. There, the defendants similarly moved to compel disclosure of plaintiff's retainer agreements, contending that such agreements were relevant and important in deciding whether the proposed class should be certified. 2020 WL 9607902, at *1. On November 23, 2020, the *Dixon* court granted defendants' motion to compel, ordering production of plaintiff's fee agreements. *Id.* *3. Later in *Dixon*, at the class certification stage, the court reviewed the retainer agreement between the plaintiff and his counsel, the Kim Firm. 2021 WL 5908431, at *11. It found that the financial arrangement between the Kim Firm and plaintiff Dixon contractually obligated Dixon to pay fees and costs were the case "resolved in any manner other than a class action." *Id.* In turn, *Dixon* held that neither plaintiff nor the Kim Firm had met the adequacy requirement of Rule 23(a) because, under the terms of the retainer, Dixon could not act independently as a fiduciary of the class considering his potential liability to class counsel. *Id.*

Here, Defendants maintain that production of the retainer agreements is necessary because the fee agreements "may be the exact same or substantially similar to the agreement at issue in this *Dixon*," and thus may reveal a conflict of interest bearing directly on the viability of class

---

[3] There are two relevant holdings from *Dixon* which are cited by Defendants throughout their moving papers—*Dixon*'s November 23, 2020 and December 14, 2021 Opinions. *See* 2020 WL 960790 (Nov. 23, 2020 Op.); 2021 WL 5908431 (Dec. 14, 2021 Op.). The Court has reviewed the entire procedural history and all opinions stemming from *Dixon* and hereinafter refers to them as "*Dixon*" for sake of clarity. *See*, *e.g.*, *Dixon v. Jefferson Cap. Sys., LLC*, No. 19-2457 (S.D. Ind.).

certification.  Moving Br. p. 3.  Plaintiff responds by arguing that Defendants' inference that its retainer agreements are the same is "baseless speculation" representing an "unwarranted fishing expedition," since Defendants offer no actual evidence that the terms of Plaintiff's fee agreements are problematic in any way or similar to the agreements in *Dixon*.  Dkt. No. 74 ("Opp'n Br.") p. 5.  Furthermore, Plaintiff submits that *Dixon* offers limited value to this case, as it represents non-binding out-of-circuit authority.  Finally, Plaintiff argues that "the district courts of New Jersey have approved nearly a brightline rule against production of fee agreements because of the unnecessary intrusion into the affairs' between class counsel and their clients."  Opp'n Br. pp. 5-7 (internal quotations and citations omitted).  Because *Dixon* is crucial to resolution of Defendants' motion to compel, the Court will consider *Dixon* in turn.

As a threshold matter, there is obvious tension between the holdings in *Dixon* and this Court's rulings in *In re Front Loading Washing Mach. Class Action Litig.*, No. 08-51, 2010 WL 30251541, at *4 (D.N.J. July 29 2010) and *In re Riddell Concussion Reduction Litig.*, No. 13-7585, 2016 WL 7325512, at *3 (D.N.J. Jan. 19, 2016).  Plaintiff cites to *In re Front Loading* and *Riddell* in support of its contention that production of its fee agreements should not be compelled.  As noted, *Dixon* is an out-of-circuit FDCPA case with similar facts to this litigation, alleging the defendants took "false, misleading, or deceptive" actions in attempting to collect on a debt after the applicable statute of limitations had expired.  2020 WL 9607902, at *1.  Neither *Riddell* nor *In re Front Loading* are FDCPA cases.  Yet, the allegations are similar enough to those raised here. *Riddell* was a class action alleging defendants made misleading and false statements about the concussion reducing properties of football helmets.  *Riddell*, 2016 WL 7325512, at *1.  *In re Front Loading* was a class action arising out of plaintiff's claims that defendants knew its washing machines were predisposed to mold and mildew problems but that the defendants nevertheless

6

failed to disclose any material defects or take other remedial action regarding its machines. *See generally In re Front Loading*, No. 08-51 at Dkt. No. 1. Relevant here, *Dixon*, *In Re Front Loading*, and *Riddell* were all faced with the same question that is now before this Court—whether production of all retainer agreements between the class action plaintiff and their attorneys should be compelled?

In examining this question, the *Dixon* court acknowledged that in 2016 *Riddell* "approved nearly a brightline rule *against* production of fee agreements because of the 'unnecessary intrusion into the affairs' between class counsel and their clients.'" *Dixon*, 2020 WL 9607902, at *3 (quoting *Riddell*, 2016 WL 7325512, at *3) (emphasis added). *Riddell* established the rule after considering the earlier District of New Jersey decision, *In re Front Loading*, which was decided in 2010 and denied a request by the defendants to compel plaintiff's fee agreements. *In re Front Loading*, 2010 WL 3025141, at *4.

The underlying arguments in *In re Front Loading* and *Riddell* mirror those made in the instant motion. The *In re Front Loading* defendants similarly argued that production of plaintiff's fee agreements was necessary on grounds of relevance, submitting that the agreements may have provided "information on whether an individual [p]laintiff is fit to represent the class." 2010 WL 3025141, at *4. The defendants there also claimed incentives within the fee agreement were likely to create a conflict of interest that would weigh against a finding of adequacy at the class certification stage. *Id.* Notwithstanding these arguments, *In re Front Loading* found that the defendants had not made the requisite showings of relevancy or necessity for compelling plaintiff's retainer agreements. *Id.*, at *4. In denying the motion to compel, this Court also observed that reasonable alternatives existed for securing the requested information:

7

> Even assuming *arguendo* that the retainer agreements are relevant and may lead to admissible evidence, this Court nonetheless finds that disclosure is unwarranted, as Defendant can obtain the discovery by alternative means, such as through the depositions of individual Plaintiffs. Thus, based on the needs of this case, the Court finds that the importance of disclosure of retainer agreements is minimal.

*Id.*[4]  In other words, *In re Front Loading* concluded that, absent specific facts, a request by a defendant to compel a plaintiff's fee agreements, made merely on the basis that such agreements may prove relevant to the adequacy of class representation, is not enough to compel the production of a plaintiff's fee agreements.  *See id.* at *3-*4.

Turning again towards *Dixon*, after briefly mentioning the rule announced in *Riddell*, the Southern District of Indiana reached the opposite conclusion and ordered disclosure of plaintiff's fee agreements.  *Dixon*, 2020 WL 9607902, at *2.  The *Dixon* court found that the likely relevance and materiality of the retainer agreements outweighed plaintiff's legitimate privacy interests.  *Id.*, at *2-*3.  Unlike in *Riddell*, the *Dixon* court was persuaded by defendants' arguments that the fee agreements might have revealed that plaintiff and his counsel are inadequate class representatives. The defendants particularly asserted that production of the agreements would prove whether plaintiff Dixon had agreed to contribute funds for the payment of attorneys' fees and expenses and whether Dixon had been promised an incentive award for his service as class representative.  *Id.*, at *2.  *Dixon* reasoned that discovery of the fee agreements would likely inform the Court's decision on the issue of class certification, specifically, as to whether plaintiff Dixon was an adequate class representative if he "ha[d] undertaken to contribute towards fees or expenses during the pendency of the litigation."  *Id.*, at *2-*3.  At the point the Southern District of Indiana rendered

---

[4] *In re Front Loading* stopped short of holding that the fee agreements were privileged.  *Id.* at *4. Thus, the Court declines to consider Plaintiff's arguments on that point.

8

this decision, plaintiff Dixon had not yet moved for class certification.  That motion came more than one year after the *Dixon* court ordered production of his retainer agreements.  *Compare Dixon*, 2020 WL 9607902 (Nov. 23, 2020) *with Dixon*, 2021 WL 5908431 (Dec. 14, 2021).  At the class certification stage in December of 2021, the *Dixon* court reviewed the produced retainer agreements and determined that plaintiff Dixon and the Kim Firm had not shown they were adequate class representatives because the court was concerned Dixon would be liable to the Kim Firm for payment of fees and expenses and thus Dixon "functionally contracted away [his] ability to act as an independent fiduciary of the class . . . ." 2021 WL 5908431, at *11.

Another similar case that informs this Court's decision is the previously mentioned decision in *Stromberg v. Midland Funding, LLC*, No. 16-9288, 2024 WL 1673360 (D.N.J. Apr. 18, 2024).  There, this Court examined a motion for class certification made by plaintiff Stromberg who, as in this case, filed a putative class action against the very same Defendants in this matter for alleged FDCPA violations, claiming Defendants regularly attempted to collect on time-barred debts.  2024 WL 1673360, at *1.  Plaintiff Stromberg's class certification motion was ultimately denied based upon her failure to satisfy the Rule 23(b)(3) threshold question of predominance.[5]

In opposing Stromberg's class certification motion, the Midland Defendants did not dispute the adequacy requirement of Rule 23(a), which the Court assumes they intend to do in this case. *Id.*, at *3 n. 2.  Nevertheless, *Stromberg* acknowledged *Dixon* directly, noting that "Midland has raised a potential issue with the adequacy requirement by filing a notice of supplemental authority and directing the Court to [*Dixon*] for the proposition that Ms. Stromberg and class counsel are

---

[5] *See id.* at *4-*5, *9 (explaining that, in addition to the four Rule 23(a)(3) requirements of numerosity, commonality, typicality, and adequacy, for class certification a plaintiff must also prove that questions of law or fact common to class members predominate over any questions affecting only individual members") (quoting Rule 23(b)(3) and citing *Kelly v. RealPage Inc.*, 47 F.4th 202, 205 (3d Cir. 2022)).

inadequate." *Id.* Again, although adequacy was not contested, the Court found "nonbinding out-of-circuit" *Dixon* to be unpersuasive. *Id.* Moreover, the Court was satisfied that plaintiff's counsel indicated that it intended to revise the retainer agreements to avoid any potential conflict of interests such as those found by the court in *Dixon*. *Id*. The Kim Firm made the following representations to the Court in *Stromberg* concerning its retainer agreements:

> 5.      [T]o the extent the retainer agreement could be rewritten to avoid th[e] misconstruction [in *Dixon*], I [plaintiff's counsel] have already initiated the process. The objective is to have an agreement with no room for being misconstrued as to the client's financial obligations in fee-shifting cases.

> 6.      [I]t has always been . . . [the Kim] Firm's understanding that the [Kim] Firm's agreement with the clients it represents with claims arising under fee-shifting statutes cases does not obligate the client to pay any legal fees including any costs or litigation expenses. To the extent Mr. Dixon's retainer agreement could be construed differently—such as in the *Dixon* opinion—it is inconsistent with the Kim Law Firm's understanding.

> 7.      The Firm has never sought fees from its clients in fee-shifting cases. Instead, fees, costs, and expenses recovered in those cases have been paid by the opposing party either by a fee award or from settlement proceeds—or nothing is recovered.

> 8.      Based on my review of *Dixon* and the Firm's standard retainer agreement in fee-shifting cases, although I firmly believe *Dixon* misconstrued the retainer agreement with Mr. Dixon, **I have initiated a process to revise the agreement to avoid construing it as did *Dixon*. Once that revision is finalized, an amended retainer agreement will be sent to each client in a fee-shifting case**.

*See* 16-cv-9288 (D.N.J.) at Dkt. No. 160-1 ¶¶ 5-8 (emphasis added). Because this litigation was ongoing at the time of this declaration, Plaintiff's fee agreements would have been subject to the Kim Firm's promised representations that no client in a putative class action would be obligated to pay fees, costs, and expenses. Further, were the Kim Firm to have disregarded the

representations made to this Court in *Stromberg*, it would have been subject to Rule 11 sanctions. *See* Fed. R. Civ. P. 11(b)-(c).

After careful consideration of the cases cited by the parties and those discussed above, the Court finds that the nonbinding out-of-circuit rulings in *Dixon* do not provide a basis for departing from this Court's established precedent here. *Riddell* held, consistent with the holding in *In re Front* Loading, that "[f]ee agreements are generally not discoverable unless the party seeking the discovery makes a preliminary showing of a relevant conflict or a *prima facie* challenge to the class representatives' adequacy to act as a class representative." 2010 WL 3025141, at *3. Additionally, "[t]he majority of federal courts considering this issue have ruled that fee agreements are not discoverable before certification." *In re Riddell*, 2016 WL 7325512, at *2 (citing *Stanich*, 259 F.R.D. at 322); *see also Piazza v. First Am. Title Ins. Co.*, No. 06-756, 2007 WL 4287469, at *1 (D. Conn. Dec. 5, 2007) (cited within *Riddell* and noting that, according to the Federal Judicial Center's Manual for Complex Litigation § 21.141 (4th ed. 2004), pre-certification production of fee agreements is largely disfavored except where the plaintiffs' and class counsel's ability to fund the action is challenged).

Unlike in *Dixon*, it does not appear to the Court that Defendants have sufficiently demonstrated the existence of a conflict. Therefore, Plaintiff is correct in its assertion that Defendants' concerns over Rule 23 inadequacy are at this point speculative in nature. *See, e.g., Fort Worth Empls.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09-3701, 2013 WL 1896934, at *2 (S.D.N.Y. May 7, 2013) (denying request for production of lead plaintiff's fee agreement because defendants failed to adequately demonstrate the relevancy of the requested information); *see also Piazza*, 2007 WL 4287469, at *1 (denying motion to compel seeking plaintiff's retainer agreement because defendant presented "no factual basis for speculating about conflicts of interest . . .

between counsel and the plaintiff"). "Defendants' infer[ence] that Plaintiff's retainer agreement may be the exact same or substantially similar to the one in *Dixon* due to the proximity of filing dates" does not give rise to a *prima facie* showing of inadequacy. Opp'n Br. p. 5. Nor have Defendants presented persuasive evidence that Plaintiff's ability to adequately represent the purported class is compromised by either a conflict of interest or contractual indebtedness. In any event, the issue of adequacy is better suited to resolution at the class certification stage, when plaintiff's formal certification motion has been fully briefed.

As stated, the Kim Firm declared in 2024 in *Stromberg* that it would review its clients' retainer agreements and ensure that putative class plaintiffs would not be contractually obligated to pay fees or expenses during the litigation. The Court assumes the Kim Firm promptly followed through on such representations and, like the court in *Dixon*, "assumes that an FDCPA class representative [] has not agreed to pay expenses . . . ." *Dixon I*, 2020 WL 9607902, at *2. To the extent that Defendants retain doubt over conflict of interests arising out of Plaintiff's fee agreements, they will have the opportunity to raise questions at a deposition regarding whether the plaintiffs have functionally contracted away their ability to act as independent fiduciaries of the class through the retainer agreements. The very same approach was endorsed in *In re Front Loading* and in *Fort Worth*. *See* 2010 WL 3025141, at *4; 2013 WL 1896934 at *2.

In conclusion, while discovery is broad at the pretrial stage, it is not unlimited. Requests for production must still demonstrate how the requested information is relevant or necessary, particularly where the information sought is likely to implicate legitimate privacy interests or other sensitive information. Defendants' premature concerns over Rule 23 adequacy and their reliance on nonbinding out-of-circuit decisions will not compel production of plaintiff's fee agreements here. Accordingly, Defendants' motion to compel [Dkt. No. 71] is **DENIED**.

## IV.    CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this on this 25th day of February, 2026,

**ORDERED** that Defendants' motion to compel [Dkt. No. 71] is **DENIED**.


_s/ James B. Clark, III_

**JAMES B. CLARK, III**
**United States Magistrate Judge**
